STATE OF IOWA ex rel. RAY HANRAHAN, County Attorney, appellee, v. ROBERT JOSEPH MILLER and COTTONWOOD CLUB, an Iowa corporation, appellants.

No. 49641.

(Reported in 96 N.W.2d 474)

MAY 5, 1959.

REHEARING GRANTED AS TO DIVISION I OCTOBER 20, 1959.
(See page 1369 of 250 Iowa)

Don J. Wilson and Walter F. Maley, both of West Des Moines, for appellants.

Ray Hanrahan, Polk County Attorney, and J. Peter Denato, Assistant Polk County Attorney, both of Des Moines, for appellee.

GARRETT, J.—This is an action in equity brought by the State of Iowa against the defendants-appellants seeking the abatement of an alleged liquor nuisance, a permanent injunction, a mulct tax against the premises and other relief. The court granted the relief prayed for.

Prior to September 12, 1956, the defendant Robert Joseph Miller operated a key club known as The Cottonwood Club, an Iowa corporation, on premises owned by him at the southwest corner of University Avenue and Seventy-third Street in Polk County, Iowa. On that date sheriff's officers seized a quantity of intoxicating liquor in bottles bearing the Iowa Liquor Control Commission seals and some in bottles not so labeled. Miller was soon thereafter indicted, charged with violating section 123.3 of the 1954 Code, tried and acquitted. On the trial of this case, he testified "I * * * am the catering manager of the Cottonwood Club. I have been manager there since March 7, 1955, and prior to that I occupied the premises as a tenant since January 3, 1955."

James A. Minard, a salesman, testified regarding the club, "As I remember, we had a couple of rounds of highballs at fifty cents a highball. In my opinion, the highball I had that night contained whiskey. * * * Mr. Miller was both behind and in front of the bar."

Janet Mary Christopher testified: "We bought our drinks from the bartender, Peck Henry. I had two or three drinks, water mixed with whiskey. We were having highballs. I believe we paid fifty cents a drink for them." She said her husband was knocked down in a fight in the club.

Arne Christopher said he did not have a membership in the club. "While there, I received intoxicants from Mr. Henry, the bartender, in the form of highballs, whiskey and sparkling water or seltzer."

George G. West, onetime assistant attorney general, testified, "I have formed an opinion of the community's attitude on this place and my opinion is that the community attitude or opinion towards the Cottonwood Club is that it is a nuisance. * * * that it is a liquor nuisance."

George A. Lundberg stated he was mayor of Clive and was a justice of the peace for six years prior to that, that the Cottonwood Club is located in Clive, and that, "From the reputation of the community, the complaints, the constant bedlam that is brought to my attention, it has for quite some time been quite a problem to the community. * * * We feel that the Cottonwood Club, by that, I mean the people around it and from different

areas, feel that is one of the wide openest liquor drinking establishments there is in the State of Iowa."

There was other testimony as to the sale and dispensation of intoxicating liquors on the premises with the knowledge and consent of Miller, and testimony of sheriff's deputies as to the reputation of the place as being a liquor nuisance, as to complaints they had received and what they had observed on the premises. One deputy sheriff testified he bought liquor there on two occasions, Miller serving him once.

All sales of intoxicants were denied and there were witnesses from the neighborhood who testified they had heard nothing unfavorable about the club. Defendant Miller testified, "* * * I can remember altercations, disagreements, but not too many fights; there was nobody hurt in these fights."

I. Appellants state many propositions upon which they rely for reversal. The first one urged "That the Polk County District Court's decree, ordering the destruction of liquor bearing the seal of the Iowa Liquor Control Commission which was seized without a search warrant, was illegal and without jurisdiction." Their second proposition is that the court erred in impounding the liquor as evidence in a civil trial.

For a determination of the questions raised we must turn first to chapter 128, Code of 1954, and particularly to section 128.19 which reads as follows: "Abatement. If the existence of the nuisance be established in a civil or criminal action, an order of abatement shall be entered as a part of the judgment in the case; which order shall direct the destruction of the liquor, * * *."

It is our opinion there was sufficient competent evidence in the record to justify the court in holding that the defendants Robert Joseph Miller and the Cottonwood Club, a corporation, were maintaining a liquor nuisance at the location and on the premises described in plaintiff's petition and that such nuisance should be enjoined. It is our further opinion that, the existence of a nuisance having been established, it was mandatory under this statute that an order of abatement be entered as a part of the judgment in the case.

The section provides that the order of abatement shall direct the destruction of the liquor, the removal from the building or

place of all fixtures, furniture, vessels, etc. and for the sale of the chattels. Acting under the mandate of section 128.19 the trial court ordered the nuisance abated "by the destruction of all liquors heretofore seized on the said premises * * *."

The appellants contend the district court had a duty at the conclusion of the criminal trial to return the liquor seized without a search warrant, the defendant having been acquitted, and urge that the acquittal of Miller was an adjudication that the liquor was lawfully kept, its status fixed, and that therefore it was not subject to condemnation. It is undisputed Miller was indicted in October 1956 on the charge of selling, or offering, keeping or possessing for sale, alcoholic liquor in violation of section 123.3 of the 1954 Code of Iowa, and that he was acquitted by a jury in the January 1957 term of court. Following Miller's acquittal, the plaintiff, defendants resisting, procured an order of court that the liquor and records seized at the Cottonwood Club on September 12, 1956, be held and preserved for use as evidence in this case.

Section 123.3 provides: "General prohibition. It shall be unlawful to manufacture for sale, sell, offer or keep for sale, possess and/or transport * * * alcoholic liquor * * *."

Plaintiff's petition alleges Miller was operating and maintaining a nuisance "by selling, dispensing, having possession of, trafficking in and keeping [for sale and] with intent to sell and dispense intoxicating liquor in violation of law" and particularly section 123.3 of the 1954 Code of Iowa.

The question we are called upon at this point to answer is, was Miller's acquittal an adjudication that the liquors taken from him were lawfully kept and therefore not subject to condemnation? The liquor ordered condemned in this case was the identical liquor taken from Miller at the Cottonwood Club and used as evidence against him in the criminal trial which resulted in his acquittal. The verdict of "not guilty" was an adjudication that Robert Joseph Miller did not sell, offer or keep for sale, possess and/or transport the alcoholic liquor which plaintiff now seeks to have condemned. Are we justified in saying, in this case where it is sought to have the liquor condemned, that the verdict of the jury means nothing? The State of Iowa was the plaintiff in the criminal case and the verdict and adjudi-

cation went against it. It did not appeal. The law with reference to that liquor was adjudicated—the defendant was held innocent of any violation of section 123.3. Now the same plaintiff seeks to have the same issue relitigated. We believe there was sufficient competent evidence to justify the court in declaring the premises a nuisance without regard to the liquor which the court has ordered condemned. The liquor was seized on September 12, 1956. All of the evidence in both cases referred to the same period of time preceding that date. We cannot say the verdict of the jury was not a determination of everything it purports to determine. The acts alleged in the indictment, if the defendant Miller were guilty of them, would have constituted a nuisance. The jury held he was not guilty. In view of that verdict, we hold the court was in error in ordering the liquor condemned. To that extent the verdict and judgment of the trial court must be reversed.

 The liquor and records here involved were taken and held without a search warrant or other legal authority. The Bill of Rights, Article I, section 8, Constitution of Iowa, provides:

"Personal security—searches and seizures. Sec. 8. The right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons and things to be seized."

No arrest of any defendant was made. Most of the liquor, but not all, carried Iowa Liquor Control Commission seals showing it had been legally purchased of the State of Iowa. It was not contraband, except perhaps for a few bottles not bearing the Iowa commission seals.

Section 751.23 is as follows: "Property restored. If it appears that the property taken is not the same as that described in the warrant, or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, the magistrate shall cause it to be restored to the person from whom it was taken." This section must be held to mean that if there is no warrant properly describing the property seized or if there is not probable cause for believing the existence of the

grounds on which the warrant was issued, the magistrate shall cause the property to be restored to the person from whom it was taken. 48 C. J. S., Intoxicating Liquors, section 403, page 676; 30 Am. Jur., Intoxicating Liquors, section 493, page 805.

In Bates v. Carter, 225 Iowa 893, at 896, 281 N.W. 727, at 728, appears the following quotation: " '* * * When the subsequent action, although civil in form, is quasi criminal in its nature, as in actions to recover penalties or declare forfeitures, it may be regarded as a second prosecution for the same offense, and be barred by a prior conviction or acquittal. This exception to the general rule is recognized, however, only where the object of the quasi criminal or penal action is punishment and not compensation. * * *.' "

The case of State v. Cobb and Certain Intoxicating Liquors, 123 Iowa 626, 627, 628, 99 N.W. 299, was a suit to condemn intoxicating liquors, wherein it is said: "The one question before us is whether the acquittal pleaded was an adjudication of the issue in the case and a bar to further proceedings. We think it was. Section 2382 of the Code provides that 'no one by himself, clerk, servant, employe or agent, shall, for himself or any person else, directly or indirectly * * * sell * * * or keep for sale, * * * or own, keep, or be in any way concerned, engaged or employed in receiving or keeping any intoxicating liquors with intent to violate any of the provisions of this chapter, or authorize or permit the same to be done.' This section of the statute is very comprehensive. It was intended to, and undoubtedly does, provide against every possible scheme that may be devised for the purpose of evading its provisions prohibiting the unlawful sale of intoxicating liquors; and an information filed thereunder would permit the introduction of evidence showing that a person was keeping, or in possession of, liquor which he intended for unlawful sale, either by himself or another, and proof of such fact would warrant a conviction. * * * If, as found by his acquittal on that trial, the liquor was neither kept to be sold by himself nor others in violation of law, it was lawfully kept by him, and an adjudication that such was the case was a bar herein and fixed the status of the liquor."

See also State ex rel. Remley v. Meek, 112 Iowa 338, 84

N.W. 3, 51 L. R. A. 414, 84 Am. St. Rep. 342; Coffey v. United States, 116 U. S. 436, 6 S. Ct. 437, 29 L. Ed. 684.

Appellees cite State ex rel. Threlkeld v. Osborne, 207 Iowa 636, 223 N.W. 363. In that case there was a verdict of not guilty under an indictment charging the keeping of a liquor nuisance on certain property and this court held it was no bar to an action to enjoin the same defendant from maintaining a liquor nuisance on the property based on the same transaction on which the indictment was based. In the instant case defendant Miller is not resisting the injunction as against himself personally but urges "only that the former acquittal was a bar to further proceedings against the liquor."

A liquor nuisance may be enjoined and abated even though the owner had no notice of illegal sales. State v. Knapp, 178 Iowa 25, 28, 158 N.W. 515, 516. The Knapp case, supra, was relied upon by the State as being in support of its position. The question in that case was, "Should an order for the destruction of the liquors, made by a justice, and the appeal of that proceeding to the district court, be held to abate an action brought in equity to have the premises declared to be a nuisance, because of the sale, or the keeping therein for sale, of intoxicating liquor, contrary to law?" The court there calls attention to the fact that the actions were not between the same parties, nor were the issues necessarily the same, and makes the observation that "Moreover, the defendants might have been enjoined in this case, because of having kept for sale, or sold, other intoxicating liquors than those taken under the search warrant."

Also see State ex rel. Hutcheon v. Marker, 208 Iowa 1001, 224 N.W. 588.

Under the provisions of section 751.23, and the implications necessarily to be drawn therefrom, and in view of the acquittal, the liquors unlawfully seized should be ordered restored to defendant Miller from whom they were taken.

II. Appellant Miller's third proposition is that the original notice served on him was fatally defective in that the signer's address does not appear thereon. The answer to this question depends upon the construction to be given rule 50, Rules of Civil Procedure. The part applicable here reads as

follows: "50. Contents of original notice. The original notice shall be directed to the defendant, and signed by plaintiff or his attorney with the signer's address."

The following "Author's Comment" appears in Volume 1, at pages 313, 314 of the Revised Edition of Iowa Rules of Civil Procedure:

"This Rule changes the former requirements * * * (c) in requiring the 'signer's address'.

"The requirements of this Rule—indeed of this whole Division—are jurisdictional. Perhaps nowhere (except in notices of appeal) is failure to comply fully and literally with a Rule so disastrous as under this Division. It deals with how the court gets jurisdiction.

"The courts cannot relax these Rules, because they have no jurisdiction to exercise any discretion, or do any act, until they acquire it in the manner here specified. The prior Iowa cases as to the fatal consequences of departing from this and the following Rules, are in full force."

It has long been held in this state that "An original notice, which is not signed by the plaintiff or his attorney, is a nullity and does not confer jurisdiction upon the court to enter a default against the defendant." Swan v. McGowan, 212 Iowa 631, 636, 231 N.W. 440, 442; Citizens Bank of Pleasantville v. Taylor, 201 Iowa 499, 207 N.W. 570; Neeley v. Incorporated Town of Mapleton, 139 Iowa 582, 117 N.W. 981.

Such a notice "* * * was fatally defective, in not being signed by any person, and did not operate to toll the statute of limitations." Citizens Bank v. Taylor, supra, at page 501 of 201 Iowa; Doerr v. Southwestern Mut. L. Assn., 92 Iowa 39, 60 N.W. 225; Hoitt v. Skinner, 99 Iowa 360, 68 N.W. 788; Farley v. Carter, 222 Iowa 92, 269 N.W. 34. In the Doerr case, supra, a notice of appeal, signed "Attorneys for the Defendant" was held to be not merely defective but no notice. "Each of the specific requisites of the statute is of equal rank with the others, and a failure to include any one is as fatal as the failure to include another." Farley v. Carter, supra, at page 94 of 222 Iowa; Rhodes v. Oxley, 212 Iowa 1018, 235 N.W. 919.

If we are to follow strictly the language of rule 50 and the construction placed thereon by the author of the Revised Edition of the Iowa Rules of Civil Procedure and if we adhere closely to the interpretation placed upon the rule and the statute which preceded it we should hold the original notice served on Miller was fatally defective and conferred no jurisdiction. We are constrained however, in view of the more recent trend of our decisions, to hold that the absence of the signer's address from the notice was, under the facts in this case, an irregularity and not a fatal defect.

As far back as 1931 Evans, J., made this observation: "We have many cases dealing with the defects of original notices and have adopted a rule of considerable liberality in sustaining the jurisdiction of the court notwithstanding many defects in the original notice." Rhodes v. Oxley, supra, at page 1020 of 212 Iowa; Krueger v. Lynch, 242 Iowa 772, 48 N.W.2d 266.

"Under our earlier decisions a strict, in fact a literal, compliance with the statute was required. A departure therefrom was fatal. By more recent decisions we have adopted a rule of liberal construction to avoid defeating action because of technical and formal defects which could not reasonably have misled defendant." Jacobson v. Leap, 249 Iowa 1036, 1040, 88 N.W.2d 919, 921.

In Halverson v. Hageman, 249 Iowa 1381, 1388, 92 N.W.2d 569, 574, a case where there were other defects in the original notice, this court said:

"There is at least one other defect, of a less serious character, in the notice. It does not contain the address of plaintiff's attorney who signed it as required by the part of rule 50 not quoted above.

"We are aware of the present tendency to hold that failure to comply strictly with some requirements such as those in rules 50, 53 does not make the judgment void if the defendant was not deprived of notice and reasonable opportunity to be heard."

Section 4.2 of the Code lays down a rule of construction as follows: "* * * Its provisions and all proceedings under it shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice."

In this case the plaintiff is the State of Iowa ex rel. Ray Hanrahan as County Attorney of Polk County. The record discloses defendant Miller had business with the County Attorney's office not long prior to the filing of this suit. No showing is made of any prejudice by reason of the fact the address of the person who signed the original notice served on Miller did not appear on the notice. No other complaint is made as to the form or contents of the notice. If any prejudice were shown on this ground we would, without hesitation, reverse.

III. Appellants' Proposition IV is that the court erred in overruling defendants' demand for a jury trial and in rendering judgment for a mulct tax of $600. We hold there was no error in either respect.

Section 128.1 provides that actions to enjoin nuisances may be brought in equity. Section 128.19 is in part as follows: "Abatement. If the existence of the nuisance be established in a civil or criminal action, an order of abatement shall be entered as a part of the judgment in the case; * * *." Section 128.38 provides for a mulct tax, as follows: "Mulct tax. When a permanent injunction shall issue * * * a tax shall be imposed upon said building * * * and against the persons maintaining said nuisance * * *."

"A proceeding to enjoin the keeping of a liquor nuisance is civil in its character, and the fact that the keeping of such a nuisance may also be punished as a crime does not affect the character of the proceedings for an injunction." State ex rel. Threlkeld v. Osborne, supra, at page 637 of 207 Iowa. In the same case, with reference to the mulct tax, it is said (page 638) : "It is not imposed as a fine or as a penalty, but it is a so-called mulct tax, which the statute provides shall be levied against the property wherein an unlawful business has been maintained."

See also State ex rel. Seeburger v. Critelli, 238 Iowa 134, 26 N.W.2d 64; State ex rel. Hutcheon v. Marker, supra.

IV. Appellants maintain the court erred in overruling defendant Cottonwood Club's motion to dismiss, in holding there was competent evidence to support certain findings of fact, urge that the conclusions of law of the court were incorrect and not supported by the greater weight of the competent evidence, that

the court erred in overruling their motions in arrest of judgment, in imposing judgment against the real estate when plaintiff failed to include the wife of Robert Joseph Miller as a necessary party by reason of her dower interest in the real estate and in ordering that the supersedeas bond be discharged in so far as it purported to stay the proceedings under the decree except as to the judgment for $600 and costs.

We have studied the record and are firmly convinced therefrom that the propositions referred to in this division are all without merit. There was ample competent evidence to support the findings and decree of the court in all particulars except as herein otherwise set out.

The decree should be modified so as to order the seized liquors and records returned to defendant Miller. In all other respects it is affirmed.—Reversed in part and affirmed in part.

BLISS, HAYS, LARSON, PETERSON, and THORNTON, JJ., concur.

THOMPSON, C. J., and GARFIELD, J., dissent from Division I and would affirm.